Brian M. Rothschild, USB #15316
Darren Neilson, USB #15005
Alexander S. Chang, USB #18879
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
BRothschild@parsonsbehle.com
DNeilson@parsonsbehle.com
AChang@parsonsbehle.com

*Attorneys for Debtor Power Block Coin, L.L.C.*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>POWER BLOCK COIN, L.L.C.<br><br>Debtor | |
| POWER BLOCK COIN, L.L.C., a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL KERIM JOSEPH STADELMANN, an individual, JASON R. BROWN, an individual, and UTXO B.V., a Netherlands private limited liability company,<br><br>Defendants. | (Related Ch. 11 No. 24-bk-23041-JTM)<br><br>Judge Joel T. Marker<br><br>Adv. No. 25-ap-02000 |

## AMENDED COMPLAINT

4936-0005-5049

Power Block Coin, L.L.C., a Utah limited liability company dba SmartFi ("**SmartFi**" or the "**Debtor**"), debtor and debtor in possession in the above-captioned chapter 11 case, by and through its undersigned counsel, alleges as follows against Defendants UTXO B.V., a Netherlands private limited liability company; Daniel Kerim Joseph Stadelmann; and Jason R. Brown (collectively, "**Defendants**") based on information and belief as a result of the Debtor's investigation to date.

## PARTIES

1.    The Debtor is a Utah limited liability company with its principal place of business in Orem, Utah County, Utah.

2.    UTXO B.V. ("**UTXO**") is a Netherlands private limited liability company with its principal place of business in Rotterdam, Netherlands.

3.    Defendant Jason R. Brown ("**Brown**") is an individual residing in Jeannette, Pennsylvania.

4.    Defendant Daniel Kerim Joseph (Kadan) Stadelmann ("**Stadelmann**") is an individual residing in Dornbirn, Austria.

5.    On information and belief, UTXO was at all relevant times undercapitalized or doing business with unreasonably small capital, unable to meet its obligations as they came due, and had liabilities, including liabilities described herein to Debtor, that exceeded its assets and ability to pay.

6.    All actions alleged herein to have been taken by UTXO were taken by Defendants Brown and Stadelmann, as applicable.

7.    On information and belief, UTXO on the one hand, and Defendants Brown and Stadelmann, on the other hand, are alter egos of each other and have no separate corporate identity,

2

4936-0005-5049

did not maintain financial separateness, did not maintain corporate formalities or records, and were mere instrumentalities of one another.

8.    UTXO was formed solely for the purpose of business with the Debtor and had no other function.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a), 157(b) and 1334(b).  This adversary proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2)(h).

10.    This adversary proceeding relates to the above-captioned chapter 11 case (the "**Chapter 11 Case**"), which was pending in this Court in the District of Utah at the time the adversary proceeding was filed.

11.    Venue is proper in the District of Utah where the Debtor's Chapter 11 Case is pending under 28 U.S.C. § 1409(a).  *See also* 28 U.S.C. § 1391(b).

12.    The Court has personal jurisdiction over Brown because Brown entered into one or more agreements with the Debtor, which is the subject of the Chapter 11 Case.  Further, Brown is a member of the Official Committee of Unsecured Creditors, is an active participant in the Chapter 11 Case, has filed a proof of claim in the Chapter 11 Case (Claim no. 5), and has purposefully availed himself of the equitable jurisdiction of this Court.

13.    The Court has personal jurisdiction over Stadelmann because Stadelmann entered into one or more agreements with the Debtor, which is the subject of a chapter 11 case in this District.  Further, Stadelmann is an active participant in the Chapter 11 Case, has filed a proof of claim in the Chapter 11 Case (Claim no. 5), and has purposefully availed himself of the equitable jurisdiction of this Court.

3

4936-0005-5049

## FACTUAL ALLEGATIONS

### I.    GENERAL ALLEGATIONS

14.    On June 20, 2024 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Central Division of Utah (the "**Court**").

15.    The Debtor and UTXO were parties to certain software development agreements whereby UTXO was contracted to design, develop, and implement various DeFi (decentralized Finance) software for Debtor.

*The Original Agreement*

16.    On or about March 15, 2021, the Debtor and UTXO entered into a Master Software Development Agreement (the "**Original Agreement**"). A true-and-correct copy of the Original Agreement is attached as Exhibit A hereto.

17.    Stadelmann signed the Original Agreement as an "Authorized Company Representative." (Ex. A, p. 9.)

18.    Pursuant to the Original Agreement, UTXO was contracted to design, develop, and implement various DeFi (decentralized Finance) software (the "**Software**") for the Debtor. (Ex. A, ¶ 1.)

19.    As part of the Original Agreement, the parties agreed that UTXO would "provide the following deliverables at the time specified for the remainder of calendar year 2021. The parties will agree to future timelines in addenda to this Agreement":

**Q2 (current quarter) - listed dates are delivery deadlines:**

(i) SFUSD Chain relaunch - until May 15, 2021
(ii) Permissioned Mining / Mining Consensus (exclusive mining) - until May 15, 2021
(iii) Speculative Coin (SMFT) BEP20 token launch - until May 15, 2021
(iv) SmartFi CeFi platform (portal) review and feedback report - until June 1, 2021

4

4936-0005-5049

(v) SmartDEX GUI rebrand finalisation with new SFUSD coin and SMFT Token – until June 15, 2021
(vi) SmartFi portal generic pentest report - until June 30, 2021
(vii) LoanCC plan and SRS/arch design - until June 30, 2021

**b. Q3:**

(i) Ledger and Trezor Hardware wallet compatibility for SFUSD - until August 30, 2021
(ii) Tokenization GUI (SecWallet customisation) - until August 30, 2021
(iii) SmartDEX webDEX alpha with API integration to SmartFI portal – until September 30, 2021
(iv) Permissioned chain layer SRS/arch design (DAML) - until September 30, 2021

**c. Q4:**

(i) Hash Marketplace (nice-hash service) - until November 30, 2021
(ii) Staking, Baking, Validation service - until November 30, 2021
(iii) webDEX revision (beta) - until December 31, 2021
(iv) Maker Tools / LP services - until December 31, 2021
(v) EoY report - until December 31, 2021

In addition to the deliverables listed above, Developer will cover further responsibilities, including but not limited to, network and infrastructure maintenance, short-term revisions and bug-fixing, reviews, continuous testing and quality assurance and DeFi stack project management and planning.

20.     The Debtor was required to accept via "acceptance testing" each key stage of the Software development.  (Ex. A, ¶ 11.)

21.     Paragraph 7 of the Original Agreement contemplates further development of the Software beyond the scope of the Original Agreement:

> **FURTHER DEVELOPMENT AND FUTURE COOPERATION.** Further development of Software may be contemplated by the Parties as Buyer moves through phases of its development. For any upgrades, modifications, or projects beyond maintenance of the current Software (as described in module1 inception phase report), the Parties shall execute an addendum to this Agreement that encapsulates the work to be performed by Developer to complete a phase and the compensation it will receive from Buyer. The provision of further development by Developer shall be contingent upon negotiation of a mutually agreeable fee and the availability of the Developer and/or Developer's personnel to complete such work. Developer will make all reasonable efforts to meet the needs of Buyer with respect to further development for phases and to provide sufficient personnel to meet

Developer's needs. Developer acknowledges and understands that its willingness and ability to provide further development of software for Buyer is a material reason why Buyer is entering into this Agreement.

22.     Paragraph 15 of the Original Agreement contains a Confidentiality provision, which states in part:

> Developer acknowledges that Buyer's purpose in pursuing the development of the Software is to gain a significant competitive advantage over competitors operating without such Software and that such advantage will be jeopardized if such competitors learn of Buyer's negotiations with Developer or the performance by Developer of its obligations hereunder. Accordingly, Developer agrees to keep such negotiations and performance of its obligations hereunder strictly confidential and not to disclose any information to any third party or entity without the prior written permission of Buyer. In no event shall Developer or any of its employees or contractors use Buyer as a reference in marketing Developer's services to any third party or entity without Buyer's prior written permission.

23.     As compensation for UTXO's development of the Software, the Debtor agreed to pay UTXO a total yearly development fee of $1,800,000.00, payable in twelve (12) equal installments in the amount of $150,000.00 at the beginning of each month during the one-year term. (Ex. A, ¶ 8.)

### UTXO Fails to Provide the Deliverables under the Original Agreement

24.     UTXO failed to provide substantial deliverables under the Original Agreement.

25.     More specifically, throughout the term of the Original Agreement, UTXO would hold weekly meetings and ensure the Debtor that every was moving along as planned.

26.     UTXO would provide the Debtor with a chart of what it would be delivering next, but UTXO consistently failed to follow through and produce the deliverables in a timely fashion (or at all in most cases).

27.     For example, in Q2 of 2021, UTXO performed only the minor tasks on the list, such as SFUSD Chain relaunch; Speculative Coin (SMFT) BEP20 token launch; SmartFi CeFi platform

6

4936-0005-5049

(portal) review and feedback report; and SmartDEX GUI rebrand finalisation with new SFUSD coin and SMFT Token.

28.     However, UTXO failed to deliver the Permissioned Mining / Mining Consensus (exclusive mining); SmartFi portal generic pentest report; and LoanCC plan and SRS/arch design.

29.     UTXO then completely failed to provide any of the deliverables from Q3 and Q4 of 2021.

30.     Despite UTXO's consistent failure to provide the deliverables (in a timely fashion or otherwise), the Debtor timely made all of its monthly $150,000.00 payments to UTXO pursuant to the terms of the Original Agreement, totaling $1,800,000.00.

***The Amended Agreement***

31.     On or about November 22, 2021, the Debtor and UTXO entered into an Amendment to Software Development Agreement (the "**Amended Agreement**"). A true-and-correct copy of the Amended Agreement is attached as Exhibit B hereto.

32.     Stadelmann signed the Amended Agreement as an "Authorized Company Representative." (Ex. B, p. 10.)

33.     In the Amended Agreement, the Debtor and UTXO agreed for UTXO to perform additional services outside the scope of the Original Agreement.  (*See id.*)

34.     As compensation for the additional services, the Debtor and UTXO agreed that the Debtor would pay UTXO "a total additional yearly development fee of $1,200,000.00 . . . for software development and maintenance during the term of twelve months (one year)." (*Id.*)

35.     The fee was to be paid pro rata over the course of the term of the agreement, *i.e.*, $100,000.00 per month.

7

36. Pursuant to the Amended Agreement, UTXO was to develop several additional DeFi technologies consisting of four development phases, including without limitation (1) SmartFi Smart Chain Platform; (2) Security Operations supervision and management; (3) SmartFi Portal Quality Assurance and Development assistance/consulting; and (4) SmartFi Pancake Swap UI Implementation.

37. The Amended Agreement also contained the same Confidentiality provision as the Original Agreement.

***UTXO Fails to Provide the Deliverables under the Amended Agreement***

38. Of the four aforementioned phases, UTXO fully completed only phase two and partially completed phase three.

39. UTXO did not complete phase one or phase four.

40. Nevertheless, the Debtor timely made its monthly payments to UTXO under the Amended Agreement.

41. In or about June 2022, during the term of the Amended Agreement, the parties mutually agreed that UTXO could utilize three to four new extra-contractual individual developers to speed up the project, which developers cost the Debtor an additional $33,000.00 per month for six months, totaling $198,000.00.

42. The purpose of these new developers was to keep the deliverables under the Original Agreement on track so that UTXO could focus on the deliverables under the Amended Agreement.

43. The Debtor also paid an additional $8,000 for a Paladin Smart Contract.

44. Notably, some of the payments under the Amended Agreement overlapped with payments under the Original Agreement.

8

45.     For cash flow reasons, the Debtor smoothed out its payments so that it was not paying $250,000.00 every month.

46.     Thereby, the Debtor paid UTXO $157,000.00 per month ($124,000.00 + $33,000.00 for the new developers).

47.     In or about September 2022, the Debtor messaged UTXO on Microsoft Teams, stating that it needed to know the status of the contract work, the current timeline, and the cost allocation.

48.     The Debtor noted, "If we have extended the time frame of the EVM environment, delayed the deliverable essentially the cost of payments should be adjusted otherwise we end up paying more for the same product. The structure is not function[ing] properly at this point."

49.     UTXO responded that if the Debtor meant adjusting the budget in the sense of decreasing the budget, UTXO would have to move its focus 100% back "to DeFi stack and leave everything else." UTXO claimed that its team was essentially working on the project for free.

50.     UTXO acknowledged that the "DeFi stack (EVM layer) is obviously delayed to Q2 2023 due to all the other ongoing things . . . . However we would be able to meet timeline with slight delay within this year/2022 if we are able to stop all other work and do only what we agreed on initially OR we further increase the budget for tech/dev."

51.     At the end of 2022, the Debtor informed UTXO that the Debtor would need a good basis for going forward with UTXO's services in 2023.

52.     UTXO responded that it was testing the software and that it would be available for the Debtor to test in January 2023.

53.     UTXO never provided the Debtor an opportunity to test the Software.

4936-0005-5049

***UTXO Demands Additional Funds to Continue Work on the Software***

54.     Despite the foregoing, on or about January 3, 2023, UTXO sent a Microsoft Teams message asking when the current bill would be paid and claiming that it could not pay staff due to the Debtor's alleged payment delay.

55.     UTXO alleged that the Debtor still owed it significant money.

56.     UTXO's billing records indicated that the Debtor should have paid a total of $3,356,000.00.  (*See* UTXO Payment History, attached as Exhibit C hereto.)

57.     Upon information and belief, UTXO's belief that the Debtor owed UTXO funds came from UTXO's erroneous issuance of a thirteenth invoice/installment on the Original Agreement, which the Debtor inadvertently paid.

58.     However, the Original Agreement was limited to twelve equal monthly installments, not thirteen.

59.     Thus, the Debtor overpaid on the Original Agreement.

60.     More specifically, on March 31, 2022, UTXO issued an invoice titled "PBC0022," described as "Longterm Collaboration Agreement – Installment 13 / SDA Amendment installment 4," for $250,000.00 ("Invoice PBC0022").

61.     $150,000.00 of Invoice PBC0022 was for an erroneous thirteenth installment under the Original Agreement. Thus, Invoice PBC0022 should have been for only $100,000.00.

62.     However, not realizing the error at the time, the Debtor paid the full $250,000.00 under Invoice PBC0022.

63.     The Debtor asked for a summary of what UTXO believed it was owed, but UTXO responded, "no you send back a proof that you overpaid like you claimed."

10

64.     As requested, the Debtor sent UTXO a summary of its payments. The Debtor noted that it expected to pay UTXO as follows:

- 12 months * $150,000.00 = $1,800,000.00 (Original Agreement)

- 12 months * $100,00.00 = $1,200,000.00 (Amended Agreement)

- 6 months * $33,000.00 = $198,000.00 (Additional Developers)

- One-time $8,000.00 (Paladin Smart Contract)

  **TOTAL: $3,206,000.00**

*See* Email from the Debtor to UTXO, attached as Exhibit D hereto.

65.     The Debtor noted that Invoice PBC0022 in the amount of $250,000.00 should have been reduced by $150,000.00 to $100,000.00.

66.     Thus, the total billed by UTXO ($3,356,000.00) should have been reduced by $150,000.00, totaling $3,206,000.00.

67.     However, the Debtor had actually paid UTXO $3,260,000.00, an overpayment of $54,000.00.  (*See id.*)

68.     Based on the foregoing, the Debtor informed UTXO that it would not pay any more funds until it received the completed and functioning Software.

69.     UTXO nevertheless refused to continue work on the project until it received more funds from the Debtor.

70.     On or about January 6, 2023, UTXO sent a Microsoft Teams message to the entire Debtor team, stating: "As of today SmartFi is without [sic] technological partner due to repeated payment default, breach of contract and the suspicion of criminal activity ('misappropriation/embezzlement of user funds'). We advise you to take all necessary precautions to protect yourself and any other potential victims (investors, users, etc)."

4936-0005-5049

71. As a result of UTXO's message, the Debtor had to send its own message to the team, stating: "Recently SmartFi Conducted an audit of UTXO (Kadan and team Komodo) services and found that UTXO has not delivered on a major portion of agreed to/software/product development commensurate with payments made. Until further notice SmartFi will no longer be using UTXO as a service provider."

72. On or about January 9, 2023, a representative from UTXO, Daniel Kerim Joseph (Kadan) Stadelmann, called the Debtor's bank.  Kadan stated that he was a tech provider for the Debtor and was located in Austria. He told CC Bank that crypto had crashed and that the bank would be impacted due to its relationship with the Debtor. Kadan also stated that he had contacted the Orem Police Department and that they would be reaching out to CC Bank.

73. Despite the Debtor overpaying UTXO on a fixed price contract, UTXO never produced the Software it contracted to develop.

74. Paragraph 20 of the Original Agreement provides that "[t]he prevailing party shall be entitled to collect any reasonable attorney's fees, costs, and necessary disbursements in addition to any other relief to which the prevailing party may be entitled."  (Ex. A, ¶ 20.)

75. Paragraph 16 of the Amended Agreement contains the same attorney fees and costs provision.  (Ex. B.)

76. Due to UTXO's breaches, the Debtor filed suit in the Fourth Judicial District Court for the County of Utah, State of Utah, Case No. 230400154 (the "**UTXO Lawsuit**").   On September 4, 2024, the Debtor was awarded a default judgment (the "**Judgment**") against UTXO in the amount of $3,260,000.00 (calculated as of April 17, 2024), together with prejudgment and post-judgment interest accruing as allowed by law, plus attorneys' fees, in the amount of

4936-0005-5049

$34,812.50 and costs in the amount of $10.75, and costs and attorneys' fees to collect the Judgment.

## II.  ALTER EGO

77.     On information and belief, UTXO did not pay Defendants Brown and Stadelmann a regular salary or hourly wages.  Instead, Defendants Brown and Stadelmann took money out of UTXO's accounts when UTXO had "excess" money from payments it had received.

78.     On information and belief, UTXO was habitually undercapitalized such that UTXO did not have sufficient operating capital to fund expenditures.

79.     Defendants Brown and Stadelmann represented to Debtor on multiple occasions that they could not pay their staff without payments from Debtor and that they were short on funds.

80.     On information and belief, Defendants Brown and Stadelmann, and in the alternative Defendants and other UTXO stockholders, habitually used UTXO's monies as if they were their own.

81.     On information and belief, UTXO did not hold shareholder meetings, board meetings, pass any corporate resolutions, keep any minutes or other corporate records, or comply with any other corporate formalities since it was formed.

82.     Defendants Brown and Stadelmann, and in the alternative Defendants and other UTXO stockholders, used UTXO's corporate form as an artifice to commit fraud against the Debtor and, specifically, to hold out the prospect of providing software development services under the agreements but, instead, take the funds paid therefor for themselves, and then use the corporate form of UTXO to shield themselves from liability, including but not limited to not bothering to defend the UTXO Judgment.

13

4936-0005-5049

83.     Defendants Brown and Stadelmann both signed documents as authorized company representatives of UTXO.

84.     Defendant Stadelmann also signed documents listing himself as the CTO (Chief Technology Officer) of UTXO.

85.     Defendant Stadelmann represented to Debtor that he paid expenses out of his own pocket related to work UTXO was supposed to perform for Debtor.

86.      Defendant Brown held himself out to Debtor as more than just a contractor for UTXO.

87.     Defendant Stadelmann represented to Debtor that Defendant Brown kept all records and information related to UTXO's accounting and banking details.

88.     Defendant Stadelmann instructed Defendant Brown to "take over" settling the dispute between UTXO and Debtor, and Defendant Brown engaged in contract negotiations with Debtor.

89.     Defendant Brown represented to Debtor that UTXO bought SmartFi tokens from Debtor (versus Brown and Stadelmann purchasing the tokens individually), and Defendant Brown threatened to "invoke our buyback" after Debtor informed UTXO that it would not pay any more funds until it received the completed and functioning Software.

90.     Defendant Brown notified Debtor that Debtor was allegedly in breach of contract and warned Debtor that it had "45 days to rectify the situation or we will be seeking compensatory measures."

**FIRST CLAIM FOR RELIEF**
**(EQUITABLE RELIEF TO AMEND THE JUDGMENT TO ADD STADELMANN AND BROWN AS CO-LIABLE ON THE JUDGMENT UNDER A VEIL-PIERCING/ALTER EGO THEORY UNDER UTAH LAW)**

91.     The Debtor repeats and re-alleges all facts and law alleged in all prior paragraphs.

14

4936-0005-5049

92.     Under Utah law, acts and obligations of a corporation may be recognized as those of a particular person when two circumstances are shown: "(1) . . . such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow. *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979).

93.     Under Utah law, eight factors have been listed as notable in determining whether a corporation is an alter ego of one or a few individuals:

(1)     undercapitalization of a one-man corporation;

(2)     failure to observe corporate formalities;

(3)     nonpayment of dividends;

(4)     siphoning of corporate funds by the dominant stockholder;

(5)     nonfunctioning of other officers or directors;

(6)     absence of corporate records;

(7)     the use of the corporation as a façade for operations of the dominant stockholder or stockholders; and

(8)     the use of the corporate entity in promoting injustice or fraud.

*Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987) (noting that the eight factors are "deemed significant, although not conclusive" in determining alter ego status).

94.     Under Utah law, the "acts and obligations of a corporation may be recognized as those of a particular person under the alter ego doctrine" when "adherence to the corporate entity *under the particular circumstances would sanction a fraud or promote injustice.*" *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1032 (Utah 1979) (emphasis in original) (citation and internal quotation marks omitted).

15

4936-0005-5049

95.     UTXO is liable to the Debtor under the Judgment in the amount of $3,260,000.00.

96.     On information and belief, Defendants are aware of the Judgment.

97.     On information and belief, Defendants, and in the alternative Defendants and other UTXO stockholders, abused the corporate form of UTXO by withdrawing assets from UTXO, including some or all of the $3,260,000.00 owed to UTXO, for the purpose of retaining those funds for themselves and keeping those funds from the Debtor and its creditors.

98.     On information and belief, Defendants, and in the alternative Defendants and other UTXO stockholders, use UTXO as a façade for their personal activities and use UTXO's monies as if they were their own.

99.     On information and belief, UTXO did not pay Defendants a regular salary; instead, Defendants co-mingled UTXO's funds with their own and took money out of UTXO at their leisure, depending on how well UTXO was doing.

100.    Defendants Brown and Stadelmann made decisions for UTXO—both signed documents as authorized company representatives of UTXO.

101.    Defendant Stadelmann also signed documents listing himself as the CTO (Chief Technology Officer) of UTXO.

102.    On information and belief, UTXO is undercapitalized, as evidenced by its failure to respond to the Debtor's prior complaint against it and its failure to return the funds transferred to it from the Debtor.

103.    Defendants Brown and Stadelmann represented to Debtor on multiple occasions that they could not pay their staff without payments from Debtor and that they were short on funds.

104.    On information and belief, UTXO fails to observe standard corporate governance and formalities.

16

4936-0005-5049

105.    On information and belief, Defendants have siphoned corporate funds, including portions of the recoverable funds received by UTXO from the Debtor.

106.    On information and belief, UTXO acted as a vehicle to receive transfers from the Debtor at or about the time of Debtor's bankruptcy, allowing Defendants, and in the alternative Defendants and other UTXO stockholders, to siphon portions of those transfers with the unjust effect of withholding them from the Debtor and creditors of the Debtor.

107.    Recognizing UTXO as a separate entity from Defendants would perpetuate injustice by rendering unreachable to creditors of the Debtor funds transferred to Defendants from UTXO, funds that came from amounts that are recoverable under the Judgment issued against UTXO.

108.    Under Utah law, Defendants are an alter ego of UTXO and are therefore liable for the acts and obligations of UTXO, including the $3,260,000.00 Judgment against UTXO.

109.    Under Utah law, the Debtor is entitled to amendment of the Judgment against UTXO to make Defendants co-liable as UTXO's alter ego.

## SECOND CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

110.    The Debtor repeats and re-alleges all facts and law alleged in all prior paragraphs.

111.    The Debtor has obtained the Judgment against UTXO in the amount of $3,260,000.00.

112.    On information and belief, Defendants were at all relevant times aware of the liabilities or the potential for liabilities underlying the Judgment.

113.    On information and belief, Defendants transferred some or all of the amounts that are recoverable under the Judgment issued against UTXO in the Judgment from UTXO to themselves.

4936-0005-5049

114.   It would be inequitable for Defendants to retain the funds transferred to themselves because doing so would deprive the Debtor and its stakeholders in its estate of funds to which it is entitled and to which Defendants have no entitlement.

115.   The Court should enter judgment against Defendants in the amount of $3,260,000.00 for unjust enrichment.

**THIRD CLAIM FOR RELIEF**
**(DISALLOWANCE OF CLAIMS)**

116.   The Debtor repeats and re-alleges all facts and law alleged in all prior paragraphs.

117.   Defendants and each of them, being liable on the Judgment, should have their claims, including Proof of Claim No. 5, disallowed by setoff.

118.   Defendants and each of them having committed breaches of contract, having obtained the crypto-based assets that form the bases of their claims, including Proof of Claim No. 5, directly or indirectly through UTXO, should have their claims disallowed under the equitable principles of unclean hands, estoppel, and laches.

119.   Defendants and each of them should have their claims disallowed for equitable reasons including that they, directly or indirectly, took funds of the Debtor for software development and failed to deliver the promised product, resulting in a millions of dollars of losses to the Debtor.

120.   As set forth below, Defendants and each of them are liable for avoidable transfers, and so their claims should be disallowed under section 502(d) of the Bankruptcy Code unless and until they have repaid the avoided transfers.

**FOURTH CLAIM FOR RELIEF**
**(AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS UNDER 11 U.S.C.**
**§ 548(a)(1)(B) OR THE UVTA, UTAH CODE ANN. § 25-6-202(1)(b) AND 203(2))**

121.   The Debtor repeats and re-alleges all facts and law alleged in all prior paragraphs.

18

4936-0005-5049

122. Under section 544(b)(1) of the Bankruptcy Code, "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." Accordingly, the Debtor may avoid any transfer that is avoidable under the UVTA applicable in Utah, Utah Code Ann. § 25-6-101, *et seq.* (the "**UVTA**").

123. Under Utah Code Ann. § 25-6-202(1)(b),

> a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor—

> Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

124. Under Utah Code Ann. § 25-6-203(1),

> (a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

> (b)  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

125. Under section 548(a)(1)(B) of the Bankruptcy Code,

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an

4936-0005-5049

interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\*       \*       \*

(B) (i)received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) (I)was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

126.    Defendants Brown and Stadelmann, as alter egos of UTXO without legal separateness, were the direct recipients of no less than $3,260,000.00 in transfers in the four years prior to the Debtor's June 20, 2024 petition date (the "**Contract Payments**").

127.    At the instruction of Defendants Brown and Stadelmann, payments were made to Defendants Brown and Stadelmann or their beneficiaries, rather than to UTXO, including an entity named "Currency Fair Limited."

128.    Alternatively, the Debtor paid the Contract Payments for the benefit of Defendants Brown and Stadelmann, who were closely associated with UTXO, benefitted from the Contract

20

4936-0005-5049

Payments, and, on information and belief, received some or all of the Contract Payments and used them as their personal funds.

129. The Debtor made these Contract Payments when it was insolvent, unable to pay its debts as they came due, or operating with unreasonably small capital, or was rendered insolvent thereby.

130. Neither Defendants Brown and Stadelmann nor Defendant UTXO provided reasonably equivalent value in exchange for the Contract Payments because they failed to deliver the promised software and failed to provide anything else of value.

131. Accordingly, the Debtor may avoid the Contract Payments to the Defendants.

**FIFTH CLAIM FOR RELIEF**
**(RECOVERY OF PROPERTY UNDER 11 U.S.C. § 550)**

132. The Debtor repeats and re-alleges all facts and law alleged in all prior paragraphs.

133. Section 550 of the Bankruptcy Code allows the Debtor to recover, from an initial transferee or any immediate or mediate transferee of an initial transferee, property transferred in a transfer avoided under section 544, 545, 548, 549, or 724(a) of the Bankruptcy Code.

134. In the alternative to Defendants Brown and Stadelmann being the direct recipients of the Contract Payments, Defendants Brown and Stadelmann were the immediate or mediate transferees of the Contract Payments from the Debtor to UTXO, which are avoidable under sections 544 and 548 of the Bankruptcy Code.

135. The Debtor is entitled to avoid and recover the Contract Payments from Brown and Stadelmann and any subsequent transferees under section 550 of the Bankruptcy Code.

136. The Debtor has not yet identified any mediate or immediate transferees other than Defendants Brown and Stadelmann but will amend or seek to join them as defendants upon learning of their identity in additional discovery.

21

4936-0005-5049

## SIXTH CLAIM FOR RELIEF
## (AVOIDANCE OF FRAUDULENT TRANSFERS UNDER UTAH CODE ANN. § 25-6-202(1)(b) AND 203(2))

137. The Debtor repeats and re-alleges all facts and law alleged in all prior paragraphs.

138. On information and belief, in the four years prior to the Petition Date, UTXO transferred millions of dollars to or for the benefit of Defendants Brown and Stadelmann before, during, and after the UTXO Lawsuit and entry of the Judgment (the "**Brown and Stadelmann Transfers**").

139. The Brown and Stadelmann Transfers and/or they were made by UTXO for the benefit of Defendants Brown and Stadelmann.

140. Defendants were aware that UTXO was liable to the Debtor under the agreements it had failed to fulfil and, eventually, that UTXO would become liable under the Judgment. Defendants and each of them were aware of the UTXO Lawsuit through demand letters and eventually service of the complaint and summons and the Motion for Default Judgment and eventually the Judgment.

141. As a result of these impending liabilities, at the times UTXO made each of the Brown and Stadelmann Transfers, UTXO was insolvent, had unreasonably small capital, and was unable to pay its debts as they came due.

142. At all relevant times hereunder, Defendants Brown and Stadelmann were effectively in charge of Defendant UTXO, and thus insiders within the definition of 11 U.S.C § 101(21) and the UVTA.

143. Defendants Brown and Stadelmann made decisions for UTXO—both signed documents as authorized company representatives of UTXO.

22

144.    Defendant Stadelmann also signed documents listing himself as the CTO (Chief Technology Officer) of UTXO.

145.    UTXO ceased operations and went defunct shortly after making the Brown and Stadelmann Transfers and/or absconded or disappeared.

146.    Under section 544(b)(1) of the Bankruptcy Code, "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." Accordingly, the Debtor may avoid any transfer that is avoidable under any applicable state UVTA.

147.    Under the UVTA, any transfer made with "actual intent to hinder, delay, or defraud any creditor of the debtor" is fraudulent as to the creditor. *Id.* § 202(1)(a).

148.    Under the UVTA, "in determining actual intent under subsection a. of [§ 25:2-25], consideration may be given, among other factors, to whether:

> (a)     the transfer or obligation was to an insider;
>
> (b)     the debtor retained possession or control of the property transferred after the transfer;
>
> (c)     the transfer or obligation was disclosed or concealed;
>
> (d)     before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (e)     the transfer was of substantially all the debtor's assets;
>
> (f)     the debtor absconded;
>
> (g)     the debtor removed or concealed assets;
>
> (h)     the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (i)     the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

4936-0005-5049

(j)      the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k)      the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

(the "**badges of fraud**"); Utah Code Ann. § 25-6-202(1)(a); *see also In re Taylor*, 133 F. 3d 1336, 1339 (10th Cir. 1998) (noting that "[w]hen one or more of these badges are present[,] fraudulent intent can be inferred" under the UVTA).

149.    The Debtor held antecedent debts against UTXO before, at, and after each of the Brown and Stadelmann Transfers from UTXO to Defendants Brown and Stadelmann.

150.    The Brown and Stadelmann Transfers were made to insiders.

151.    The Brown and Stadelmann Transfers were made without reasonably equivalent value.

152.    The Brown and Stadelmann Transfers were made while UTXO was insolvent, operating with unreasonably small capital, and/or unable to pay its debts as they came due.

153.    The Brown and Stadelmann Transfers were of substantially all of the remaining assets of UTXO.

154.    UTXO ceased operations, dissolved, or otherwise went defunct shortly after making the Brown and Stadelmann Transfers.

155.    The Defendants and each of them were aware that that UTXO was liable to the Debtor under the agreements it had failed to fulfil and, eventually, that UTXO would become liable under the Judgment. Defendants and each of them were aware of the UTXO Lawsuit through demand letters and eventually service of the complaint and summons and the Motion for Default Judgment and eventually the Judgment.

156.    The Brown and Stadelmann Transfers were made shortly before or after the Debtor's initiation of the pending UTXO Lawsuit and obtaining the Judgment.

4936-0005-5049

157.   Accordingly, the Brown and Stadelmann Transfers were made with actual intent to hinder, delay, or defraud the creditors of UTXO and, specifically, the Debtor, and should be avoided.

158.   Under Utah Code Ann. § 25-6-202(1)(b),

a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor—

Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

159.   Under Utah Code Ann. § 25-6-203(1),

(a)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b)   A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

160.   The Debtor held antecedent debts against UTXO before, at, and after each of the Brown and Stadelmann Transfers from UTXO to Defendants Brown and Stadelmann.

161.   UTXO made the Brown and Stadelmann Transfers without reasonable equivalent value provided by Brown and Stadelmann.

25

162.    The Brown and Stadelmann Transfers were made while UTXO was insolvent, operating with unreasonably small capital, and/or unable to pay its debts as they came due.

163.    In the alternative, the Brown and Stadelmann Transfers were made to insiders on account of an antecedent debt while UTXO was insolvent, and while Defendants Brown and Stadelmann had reasonable cause to believe that UTXO was insolvent.

164.    Accordingly, the Brown and Stadelmann Transfers are avoidable under the UVTA.

**SEVENTH CLAIM FOR RELIEF**
**(REMEDIES UNDER UVTA UTAH CODE ANN. § 25-6-303)**

165.    The Debtor repeats and re-alleges all facts and law alleged in all prior paragraphs.

166.    The UVTA provides for the following remedies to secure repayment of any transfer avoidable under the UVTA:

> (1) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 25-6-304, may obtain:
>
>> (a) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>>
>> (b) an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law;
>>
>> (c) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>>
>>> (i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>>>
>>> (ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>>>
>>> (iii) any other relief the circumstances may require.
>
> (2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court orders, may levy execution on the asset transferred or its proceeds.

4936-0005-5049

Utah Code Ann. § 25-6-303.

167. As set forth above, the Brown and Stadelmann Transfers and the Contract Payments are avoidable under the UVTA.

168. Accordingly, the Debtor is entitled to (a) avoidance of the Brown and Stadelmann Transfers and the Contract Payments; (b) attachment and other provisional remedies against the property transferred in the Brown and Stadelmann Transfers and the Contract Payments to the extent that they were transferred to or for the benefit of Defendants Brown and Stadelmann; (c) an injunction against further transfers by Defendants Brown and Stadelmann; (d) appointment of a receiver to take charge of the assets transferred or of other property of Defendants Brown and Stadelmann; (e) other relief as the circumstances may require, including a judgment the amount transferred and for interest to the date of payment.

## RESERVATION OF RIGHTS

169. The Debtor reserves the right to bring all other claims or causes of action that the Debtor might have against Defendants on any grounds as allowed under law or in equity.

## REQUEST FOR RELIEF

**WHEREFORE**, the Debtor requests entry of a judgment in its favor against Defendants as follows:

1. For amendment of the Judgment for the Debtor against UTXO to make Defendants Brown and Stadelmann co-liable on the Judgment as UTXO's alter ego and/or entry of judgment against Brown and Stadelmann in the amount of $3,260,000.00 plus interest and attorneys' fees accruing thereunder;

2. For pre- and post-petition interest on the amounts owed by Stadelmann and Brown to the full extent allowed under applicable law at the highest legal rate;

27

4936-0005-5049

3.      For avoidance and recovery of the Brown and Stadelmann Transfers and the Contract Payments against Defendants;

4.      For the remedies under the UVTA against all Defendants;

5.      For disallowance of any claims of Defendants;

6.      For an award of costs and attorneys' fees incurred in bringing this Complaint;

7.      And for all such other relief as is just and proper.

DATED this 13th day of February, 2025.

**PARSONS BEHLE & LATIMER**

*/s/ Darren Neilson*
Darren Neilson

*Attorneys for Debtor Power Block Coin, L.L.C.*

28