Christopher L. Perkins (admitted pro hac vice)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
951 E. Main Street, 13th Floor
Richmond, VA 23219
Telephone: (804) 788-9636
Facsimile: (804) 698-2950
cperkins@eckertseamans.com

James W. Anderson (9829)
Walter A. Romney (7975)
CLYDE SNOW & SESSIONS
201 S. Main St., Suite 2200
Salt Lake City, UT 84111
Telephone: (801) 322-2516
Facsimile: (801) 322-2516
jwa@clydesnow.com
war@clydesnow.com

*Attorneys for Defendants Daniel Kerim Joseph Stadelmann
And Jason R. Brown*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| POWER BLOCK COIN, L.L.C., a Utah Limited liability company, | ) ) ) | Bankruptcy Case No. 24-23041 |
| | ) | Chapter 11 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DANIEL KERIM JOSEPH STADELMANN, an individual, JASON R. BROWN, an individual, and UTXO B.V., a Netherlands private limited liability company, | ) ) ) ) | Judge Joel T. Marker<br><br>Adv. No. 25-02000 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS DANIEL KERIM JOSEPH STADELMANN
## AND JASON R. BROWN'S MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

## PRELIMINARY STATEMENT

Power Block Coin, L.L.C.'s ("**Debtor**") Amended Complaint suffers from a fatal flaw – it seeks to ignore the corporate form of a company of which the individual defendants are not owners. Worse, the Amended Complaint seeks to make an "end run" around certain state court proceedings where the Debtor intentionally did not name the Individual Defendants, but obtained a judgment against the company, not on the merits, but by default[1].

The Amended Complaint is Debtor's second attempt to hold Jason Brown ("**Brown**"), and Daniel Stadelmann ("**Stadelmann**") (collectively, the "**Individual Defendants**") liable for a judgment Debtor obtained by default in state court against UTXO, B.V. ("**Company**") for breach of contract ("**Default Judgment**"). Each of the seven counts against the Individual Defendants in the Amended Complaint hinge on the erroneous assertion that the Individual Defendants are alter egos of the Company and, therefore, should be held liable for the Default Judgment. As detailed herein, Plaintiff has not—and cannot—put forth any non-conclusory factual support for that assertion.

In its original Complaint, the Debtor alleged that the Individual Defendants were owners of the Company. Dkt. No. 1 at ¶6. Following receipt of Individual Defendants' correspondence to counsel for Debtor pursuant to Fed. R. Civ. P. 11, which included a copy of the online publicly available Netherlands Chamber of Commerce corporate record reflecting that a Nicholas Ammon is the "sole shareholder" of the Company, and has held that distinction since May 11, 2019, Debtor withdrew its allegations of ownership. The result is an Amended Complaint which wholly lacks any factual basis for its alter ego theory. The law is clear that only owners of a company can be

---

[1] Undersigned counsel does not represent the corporate Defendant, however, the Individual Defendants have knowledge of facts bearing on the breach of contract dispute between the Debtor and the corporation. Having left the Individual Defendants out of the state court process, the Debtor has effectively precluded litigation of that issue on the merits.

held liable as alter egos.  *See Springfield Finance & Mortgage Co., LLC v. Lilley*, 2016 WL 4275642 (D. Utah 2016)(requiring a "unity of interest and ownership", and reciting such factors necessary to state a plausible theory of alter ego as (1) undercapitalization of a *one-man corporation*; (4) siphoning of the corporate funds *by the dominant stockholder*; (5) nonfunctioning of other *officers or directors*; (7) the use of the corporation as a façade for operations *of the dominant stockholder…*")(emphasis added).  This makes sense as it is the owners of a company - not its employees and independent contractors - who, in the first instance, enjoy the protection from personal liability that corporate law provides, and which can be avoided when such an owner abuses that protection, for his benefit.  No such facts exists here with respect to the Individual Defendants.

In addition to its failure to establish its alter ego theory of liability, the Amended Complaint also requests relief that cannot be granted, asserts causes of action that do not exist, and otherwise fails to adequately plead facts to support any of the claims against the Individual Defendants.  For these reasons, the entirety of Debtor's Amended Complaint as against the Individual Defendants should be dismissed with prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

**The State Court Proceedings**

Pre-petition, on January 24, 2023, the Debtor, through the same law firm representing it in these bankruptcy proceedings, filed a lawsuit for breach of contract against the Company in the Fourth Judicial District Court for the County of Utah, State of Utah, Case No. 230400154 (the "**Utah Lawsuit**").  Amended Complaint at ¶ 76.  Curiously, all of the pleadings in that case are filed under seal such that Defendants are denied access to the proceedings and the factual allegations contained therein.  On September 4, 2024, the Debtor obtained a $3.2 million default judgment against the Company in the Utah Lawsuit.  *See id.*  Neither of the Individual Defendants

had any involvement with the Utah Lawsuit; neither were parties to the Utah Lawsuit, nor were they served with any papers relating to the Utah Lawsuit. Further, it does not appear from the docket that the Debtor conducted any post-judgment discovery pursuant to URCP Rule 64, in an effort to collect its default judgment, nor has the Debtor sought to hold the Company's owner liable. Instead, the Debtor has pursued the Individual Defendants in this forum.

**The Bankruptcy Proceedings**

On June 20, 2024, the Debtor filed its Petition for relief under chapter 11 of title 11 in this Court. On August 28, 2024, the Individual Defendants filed a proof of claim (Claim 5-1) for approximately $1.8 million in connection with Debtor's breach of its buyback guarantees related to the Individual Defendants' purchase of SMTF tokens.[2] On December 16, 2024, prior to the institution of this adversary proceeding, and on the eve of a hearing on Debtor's motion to extend exclusivity, the Debtor, through the same law firm which is counsel to Debtor in this proceeding, filed its Amended Plan of Reorganization ("**Amended Plan**"). Article 2.2(e) of the Amended Plan proclaimed that "the Debtor **commenced** an adversary proceeding (the "Brown Adversary Proceeding") seeking to hold the [sic] Jason Brown and Stadelmann liable for the UTXO Judgment on theories of alter ego, direct liability, piercing the corporate veil, and successor liability and, as an alternative, to disallow their claim" (emphasis added). As the true chronology reveals, at the time of the filing of the Amended Plan, this adversary proceeding had **not** been commenced, but was filed weeks later.

---

[2] The Individual Defendants are also Plaintiffs in an action pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:23cv554) against Aaron Tilton, the principal of the Debtor.

**The Adversary Proceeding**

At its core, this is a breach of contract case. Debtor's original Complaint contains 80 factual paragraphs, of which only a handful (paragraphs 5-8, and 76-80) attempt to support a claim for alter ego. The other 90% of the Complaint describes the contractual dispute between the Company and the Debtor. What few paragraphs that even address alter ego are nothing more than bald legal assertions which lack any factual support. To the contrary, the Complaint woefully falls short of containing any facts to support any claim that could find Defendants' liable for the state court judgment. Instead, the bald factual allegations hide behind a vague "information and belief" clause.

On February 13, 2025, and after receipt of Individual Defendants' Rule 11 letter, the Debtor filed the Amended Complaint. Much like the original complaint, the Amended Complaint contains only a handful of allegations that purport to support liability against the Individual Defendants (paragraphs 5-8, and 77-90). Notably, the Amended Complaint removes any allegation that the Individual Defendants are owners of the Company, and instead includes the oft-used phrase "Defendants Brown and Stadelmann, and in the alternative Defendants and other UTXO stockholders…." *See, eg.* ¶¶ 80, 82, 97. While it is unclear what this clause intends, it is an implicit acknowledgement by the Debtor that alter ego claims only apply to stockholders (or owners) and represents an apparent effort to "bootstrap" such claims against the Individual Defendants, but without any facts to support it.

The Amended Complaint alleges that the Debtor and the Company were parties to software development agreements, under which the Company agreed to design, develop, and implement certain software. (*Id.* ¶ 15). As alleged, these contracts were between the Debtor and the Company; the Debtor does not allege that the Individual Defendants were parties to any of the

contracts at issue.  The first of these alleged contracts (the "**Original Agreement**") was entered into between the Debtor and UTXO on or about March 15, 2021, whereby the Company agreed to implement certain software and provide certain "deliverables" in exchange for a sum of money in twelve installments.  (*Id.* ¶¶ 16, 19, 23, Exhibit A to Amended Complaint).  The Debtor alleges that it made the required payments to the Company, but the Company failed to provide the agreed upon "deliverables."  *See* (*id.* ¶¶ 24-30).

Despite these allegations of breach by the Company, the Debtor allegedly entered into a subsequent Amendment to the Software Agreement ("**Amended Agreement**"), under which the Debtor contracted with the Company to perform additional services outside the scope of the Original Agreement in exchange for payment of an additional yearly development fee.  *See* (*id.* ¶¶ 31-34).  The Debtor again alleges that it made the required payments, but that the Company failed to perform the additional services agreed to in the Amended Agreement.  *See* (*id.* ¶¶ 39-40).

For the reasons articulated herein, the Amended Complaint is both legally and factually unfounded and should be dismissed in its entirety with prejudice to refile.

## STANDARD AND SCOPE OF REVIEW

A court should grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the factual allegations set forth in the complaint do not establish a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).  "[P]lausibility refers to 'the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.'"  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and alteration omitted)).

"When a district court is considering a motion to dismiss pursuant to Rule 12(b)(6), the

court must accept as true all well-pleaded facts, and construe all reasonable allegations in the light

most favorable to the plaintiff." *Sunrise Valley, LLC v. Kempthorne*, 528 F.3d 1251, 1254 (10th

Cir. 2008) (internal quotations omitted).  However, "in analyzing the sufficiency of the plaintiff's

complaint, the court need accept as true **only the plaintiff's well-pleaded factual contentions,**

**not his conclusory allegations**." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)(emphasis

added).  "[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of

law and consider whether the remaining specific factual allegations, if assumed to be true,

plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC,* 656 F.3d at 1214.

## ARGUMENT

I.  <u>**The Debtor has failed to plead any non-conclusory allegations to support a**</u>
<u>**reasonable inference that the Individual Defendants are alter egos of the Company.**</u>

The Debtor asserts seven claims against the Individual Defendants.  The Amended

Complaint does not allege that the Individual Defendants are liable based on their individual

conduct, but that they should be held liable for the Default Judgment against the Company.  Thus,

for each of its seven claims for relief, Debtor's theory of liability against the Individual Defendants

entirely depends on its claim that the Company and the Individual Defendants "are alter egos of

each other" such that the Individual Defendants should be held liable for the obligations and

actions of the Company.[3]  *See* (Amended Complaint, ¶ 7).  However, the Debtor does not allege

---

[3] "An alter ego claim is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation." *Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968, 971 (internal quotations omitted).

that the Individual Defendants were owners of the Company, and otherwise fails to plead any non-conclusory facts to support a reasonable inference that Individual Defendants were an alter ego of the Company.  For these reasons alone, each claim against the Individual Defendants should be dismissed.

The general rule under Utah law is that "a corporation is regarded as a legal entity, separate and apart from its stockholders."  *Dockstader v. Walker*, 510 P.2d 526, 528 (Utah 1973).  The Supreme Court of the United States has recognized that "[t]he insulation of a stockholder from the debts and obligations of his corporation is the norm, not the exception."  *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402–03 (1960) (citations omitted).  "It is only in '**extreme circumstances**' that 'the corporate form will be disregarded and the personal assets of a **controlling shareholder or shareholders** may be attached in order to satisfy the debts and liabilities of the corporation.'"  *Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1209 (D. Utah 2007) (quoting *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993))(emphasis added).

Courts allow a party to pierce the corporate veil under an alter ego theory only if it can satisfy the following two-part test: (1) "that there was such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct"; and (2) "that adherence to the corporate fiction would sanction a fraud, promote injustice, or lead to an evasion of legal obligations."  *Id.* (citing *Greater Kansas City Roofing*, 2 F.3d at 1051).  *See also Transamerica Cash Rsrv., Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 26 (Utah 1990).  Courts applying Utah law consider the following factors when determining whether the alter ego doctrine applies to a situation:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the

dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012).  "The standards for the application of alter ego principals are high, and the imposition of liability notwithstanding the corporate shield is to be exercised reluctantly and cautiously."  *McCulloch Gas Transmission Co. v. Kansas–Nebraska Natural Gas Co.*, 768 F.2d 1199, 1200 (10th Cir. 1985).

The Debtor alleges in conclusory fashion that "[a]ll actions alleged herein to have been taken by UTXO were taken by Defendants Brown and Stadelmann," (Amended Complaint, ¶ 6), that the Individual Defendants and the Company "were mere instrumentalities of one another[,]" (*id.* ¶ 7), and that "UTXO was formed solely for the purpose of Defendants Brown and Stadelmann's business with the [Plaintiff] and had no other function." (*Id.* ¶ 8).  These allegations are knowing misrepresentations.  A cursory review of the relevant online public records reveals that Nicholas Ammon is the "sole shareholder" of UTXO, and has held that distinction since UTXO was incorporated on May 11, 2019, two years prior to any contractual relationship with the Debtor.

Crucially, the Individual Defendants are not, and have never been, owners or shareholders of the Company, and the Debtor's alter ego theory fails based on this fact alone.  The alter ego theory, and corporate veil piercing generally, does not apply to a corporation's employees or agents, only to its owners.  In extreme situations where the corporation is not regarded as a separate entity from its owners, courts will "go behind the corporate entity and hold a *stockholder* liable for the debts of the corporation or to hold that it is the *stockholder* and not the corporation which owns the assets."  *Dockstader v. Walker*, 29 Utah 2d 370, 373, 510 P.2d 526, 528 (1973) (emphasis added).  A corporate veil cannot, however, be pierced to hold a company's employees or agents personally liable, only the corporation's owners.

That the alter ego theory cannot apply to non-owners of a company under Utah law was made clear in *Cole v. Salt Creek, Inc.*, where the plaintiff argued that liability of the corporate defendant should extend to non-shareholder affiliate companies.  The United States District Court for the District of Utah rejected this argument and held that the plaintiff had failed to show "a basis for extending alter ego liability to [defendant's] non-shareholder affiliates . . . under Utah law." *Cole v. Salt Creek, Inc.*, No. 2:08-CV-928 DN, 2012 WL 5331243, at *5 (D. Utah Oct. 29, 2012) (unpublished).  In doing so, the *Cole* court stated that: "The parties have not cited, and the court's own research has not yielded, any case in Utah extending alter ego liability to a non-shareholder affiliate company."  *Id.*  Thus, because the Amended Complaint does not contain any allegation that the Individual Defendants are, or ever were, owners of the Company, the Debtor's alter ego theory of liability fails as a matter of law.

Moreover, in an effort to establish some control over the Company on the part of the Individual Defendants, the Debtor makes a series of vague and conclusory allegations, nearly all of which are stated "on information and belief."  *See, e.g.,* (Amended Complaint, ¶¶ 7, 77, 78, 80, 81, 96-99, 104-106).  These allegations merely recite—often verbatim—the elements and factors required to establish an alter ego theory.  *See* (*id.*).  The Amended Complaint is devoid of even a single specific, non-conclusory factual allegation to plausibly support its alter ego theory.

When presented with similar pleadings lacking specific factual allegations, courts have consistently dismissed claims for liability based on an alter ego theory.  In *GeometWatch Corp. v. Hall*, for example, the United States District Court for the District of Utah dismissed plaintiff's claims based on an alter ego theory because the plaintiff "failed to make factual allegations sufficient to state a plausible claim that [the company at issue was], in fact, an alter ego of [defendant]."  *GeometWatch Corp. v. Hall*, No. 114CV00060JNPPMW, 2017 WL 1136946, at *7

(D. Utah Mar. 27, 2017) (unpublished). Given the lack of supporting factual allegations, the court rejected plaintiff's alter ego allegation as "a mere label or legal conclusion that the court need not accept as true." *Id.* *See also McDonald v. Beko Assocs., Inc.*, No. 2:08-CV-328 TS, 2008 WL 2952278, at *2 (D. Utah July 28, 2008) (unpublished) (dismissing claims based on an alter ego theory because "[t]he complaint allege[d] absolutely no facts to substantiate the claim that [defendant] acted as an alter ego."). Similarly, in *McNeill v. Geostar*, the United States District Court for the District of Utah held that plaintiff's speculative and conclusory claims relating to its alter ego theory were insufficient to warrant jurisdictional discovery because they were "vague and conclusory [and] largely stated 'upon information and belief[.]'" *McNeill v. Geostar*, No. 2:06-CV-911TS, 2007 WL 1577671, at *3 (D. Utah May 29, 2007) (unpublished). Such is the case here.

In *Springfield Fin. v. Lilley*, the court held that the complaint lacked the requisite supporting allegations "necessary to state a plausible theory of alter ego liability[,]" even where the complaint included "allegations to support the alter ego elements[.]" *Springfield Fin. v. Lilley*, No. 2:14-CV-00679-EJF, 2016 WL 4275642, at *5 (D. Utah Aug. 12, 2016) (unpublished). As a result, the court held that plaintiff's "allegations f[e]ll short of plausible because they d[id] not go beyond the 'formulaic recitation of the elements of a cause of action.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Here, the Debtor's alter ego theory allegations are insufficient for each of the reasons articulated in *Hall*, *McNeill*, and *Springfield*—as in *Hall*, the Debtor fails to put forth any specific factual allegations to plausibly support its alter ego theory; as in *McNeill*, the Debtor's allegations are based almost entirely "on information and belief;" and like in *Springfield*, the Debtor puts forth only vague and conclusory recitations of the alter ego elements. The Amended Complaint has failed to plead facts sufficient to support a reasonable inference that Individual Defendants were

10

acting as the alter ego of the Company.  Because each of Plaintiff's claims for relief depends on establishing alter ego liability, all of Plaintiff's claims against the Individual Defendants should be dismissed.

II.     **The Debtor has failed to plead facts sufficient to plausibly support a right to relief for any of its claims.**

Each of the Debtor's claims initially depend on successfully establishing that the Company is an alter ego of Defendants Stadelmann and Brown.  As articulated above, the Debtor has failed to put forth even a single non-conclusory fact to support its alter ego theory.  Even if this were not the case, however, the Debtor's claims for relief fail for the following additional and independent reasons.

A.  **The Debtor's claim for equitable relief to amend a state court judgment to add Stadelmann and Brown as co-liable (First Claim for Relief) should be dismissed because the Court does not have the authority to grant the requested relief.**

On January 24, 2023, the Debtor initiated the Utah Lawsuit and received a default judgment against the Company on September 4, 2024.  *See* (Amended Complaint, ¶ 76).  Importantly, neither Stadelmann nor Brown had any involvement with the Utah Lawsuit or the subsequent default judgment.  Neither Stadelmann nor Brown were named as defendants in the Utah Lawsuit, nor were either of them ever served with any pleadings, orders, or judgments relating to the Utah Lawsuit.  At no time during the pendency of the Utah Lawsuit did the Debtor file a motion to add either Individual Defendant as a party.  After the court entered a default judgment against the Company, the Debtor did not appeal the judgment or move to alter or amend the judgment within the time specified by the Utah Rules of Civil Procedure.  *See* Utah R. Civ. P. 59(e).  Despite this, the Debtor now requests that this Court, a federal Bankruptcy Court, retroactively impose liability onto Brown and Stadelmann for a default judgment entered against the Company in a now closed

11

state court lawsuit.  This request is improper, lies outside of the authority of this Court, and should be denied.

United States Bankruptcy Courts are afforded broad equitable powers to carry out the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).  However, "the Court cannot simply rely on its equitable powers under 11 U.S.C. § 105 to ignore a prior state court judgment."  *In re S-Tek 1, LLC*, 625 B.R. 519, 524–25 (Bankr. D.N.M. 2020) (citing *In re Scrivner*, 535 F.3d 1258, 1263 (10th Cir. 2008) ("We have repeatedly emphasized, ... that a bankruptcy court may not exercise its 'broad equitable powers' under § 105(a) 'in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code.'")).  Even the most expansive possible interpretation of the Bankruptcy Court's equitable powers would not include the power to retroactively add a party not named in the lawsuit to a default judgment entered in a closed state court action.

In fact, no federal court—with the possible exception of the Supreme Court of the United States[4]—has the authority to grant Plaintiff's request.  *See Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1176 (10th Cir. 2018) ("Within the federal judicial system, the authority to set aside state-court judgments is the exclusive province of the United States Supreme Court.").  The Rooker-Feldman doctrine prohibits "a federal action that tries to modify or set aside a state-court judgment[.]"  *Id.* at 1174.  *See also In re Shook*, No. 24-10724-T7, 2024 WL 4270570, at *4 (Bankr. D.N.M. Sept. 20, 2024) (unpublished) (stating that the Rooker-Feldman doctrine "applies to bankruptcy

---

[4] Although the Supreme Court of the United States has the authority to hear appeals from state court judgments, it is unlikely that even it would have the authority to retroactively add a party not named in a lawsuit to a default judgment based on the constitutional principles of comity, federalism, and due process.

courts."). In other words, a party in a state court action cannot bring "a case seeking review and rejection of that judgment in federal court." *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012). Thus, under the Rooker-Feldman doctrine, Plaintiff is clearly prohibited from pursuing a federal action seeking to modify the state court judgment against UTXO.

Even if it were not prohibited under the Rooker-Feldman doctrine, the Debtor's request that the Court retroactively impose liability onto the Individual Defendants in the Utah Lawsuit should be denied for the more fundamental reason that granting such a request would be antithetical to basic notions of notice, due process, and fundamental fairness. The Individual Defendants were not named as parties in the Utah Lawsuit, were not served with any papers from the Utah Lawsuit, and were otherwise not involved with the Utah Lawsuit at any stage. Thus, the Individual Defendants had no opportunity or reason to defend themselves in the Utah Lawsuit.

For all the reasons stated above, The Debtor's First Request for Relief against the Individual Defendants must be denied.

**B. The Debtor's claim for unjust enrichment (Second Claim for Relief) should be dismissed because it does not allege that it conferred a benefit upon the Individual Defendants.**

The Debtor claims that the Individual Defendants transferred some or all of the amounts recoverable under the Utah Lawsuit default judgment against UTXO to themselves, and that the Individual Defendants have been unjustly enriched as a result. *See* (Amended Complaint, ¶ 113). To prevail on an unjust enrichment claim under Utah law, the Debtor must satisfy each of the following three elements: (1) there was a benefit conferred on one person by another; (2) the conferee appreciated or had knowledge of the benefit; and (3) the conferee accepted or retained the benefit "under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000).

In support of its unjust enrichment claim, the Debtor unambiguously alleges that the benefit retained by the Individual Defendants was conferred upon them by the Company — or "themselves" under Debtor's alter ego theory.  Specifically, the Debtor states that the Individual Defendants "transferred some or all of the amounts that are recoverable under the Judgment issued against UTXO in the Judgment from UTXO to **themselves**."  (Amended Complaint, ¶ 113) (emphasis added).  The Debtor further alleges that "it would be inequitable for [Individual] Defendants to retain the funds transferred to **themselves**[.]" (*Id.* ¶ 114) (emphasis added). Nowhere does the Debtor allege that the benefit conferred upon Individual Defendants came from the Plaintiff.

These allegations, on their face, do not satisfy the first element of an unjust enrichment claim.  "Under Utah law, a party cannot satisfy the first element of unjust enrichment if the party did not confer a benefit on the alleged recipient." *Sec. Sys., Inc v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1193 (D. Utah 2019).  "Importantly, any benefit conferred must come from the Plaintiff and cannot come from a third party." *Onyx Lifestyle Ltd. v. First Data Merchant Services, LLC et al.*, No. 2:20-CV-130 TS-CMR, 2020 WL 5016892, at *3 (D. Utah Aug. 25, 2020) (unpublished).  "Case law is clear that it is the claimant who must confer the benefit[.]" *Alder Holdings, LLC*, 421 F. Supp. 3d at 1194.  Courts routinely dismiss unjust enrichment claims when the plaintiff does not allege that it conferred the benefit upon the recipient. *See id.* (dismissing unjust enrichment claim where plaintiff did not allege that it conferred on the alleged recipient); *MediaNews Grp., Inc. v. McCarthey*, 432 F. Supp. 2d 1213, 1239 (D. Utah 2006), aff'd, 494 F.3d 1254 (10th Cir. 2007) (holding that plaintiff did not satisfy the first element of an unjust enrichment claim because they did not allege that they conferred the benefit); *Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996), overruled on other grounds by *Davencourt at*

*Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrim's Landing, LC*, 2009 UT 65, 221 P.3d 234 ("The Association did not confer any benefit upon any of the defendants and therefore cannot claim that the defendants have been unjustly enriched.").

Because the Debtor has failed to establish that it conferred a benefit upon the Individual Defendants, its unjust enrichment claim should be dismissed.

## C. The Debtor's claims for avoidance and recovery of fraudulent transfers (Third, Fourth, Fifth, and Sixth Claims for Relief) are premature.

The Debtor's Third through Sixth Claims for Relief – mixing bankruptcy and state court fraudulent transfer laws - presuppose a ruling in its favor on its alter ego claim.  Stated differently, the Debtor cannot pursue any such claims until it first establishes that the Individual Defendants and the Company are one and the same.  Thus, each of these claims is without any factual basis, and they fail for the reasons stated herein with respect to the Debtor's claims for alter ego.

## D. The Debtor's claim for remedies under the Utah statute (Seventh Claim for Relief) should be dismissed because it is not a viable cause of action.

The Debtor does not put forth an independent cause of action under the heading "Seventh Claim for Relief;" instead, it lists the **remedies** it claims it is entitled to under Utah Code Ann. § 25-6-303.  *See* (Amended Complaint, ¶ 168).  The statute cited by the Debtor—Utah Code Ann. § 25-6-303—lists the relief available to a creditor under that chapter of Utah's Bankruptcy law, but that relief cannot be granted without an underlying cause of action.  While potentially appropriate as part of another cause of action or a as part of a "WHEREFORE" clause, the Debtor's requested remedies in its seventh claim for relief are entirely inappropriate as an independent cause of action. Because the Debtor's seventh claim for relief is not a viable cause of action, it must be dismissed.

**CONCLUSION**

For the reasons set forth above, The Debtor's Amended Complaint against Stadelmann and Brown should be dismissed for failure to state a claim upon which relief can be granted, and the Individual Defendants awarded their costs in defending such claims, together with such other relief as the Court deems appropriate.  .

Respectfully submitted,

/s/      *Christopher L. Perkins*
Christopher L. Perkins (admitted pro hac vice)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
951 E. Main Street, 13th Floor
Richmond, VA 23219
Telephone: (804) 788-9636
Facsimile: (804) 698-2950
cperkins@eckertseamans.com

James W. Anderson (9829)
Walter A. Romney (7975)
CLYDE SNOW & SESSIONS
201 S. Main St., Suite 2200
Salt Lake City, UT 84111
Telephone: (801) 322-2516
Facsimile: (801) 322-2516
 jwa@clydesnow.com
war@clydesnow.com

Dated: March 12, 2025

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2025, this document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).


/s/      Christoper L. Perkins